## Thomas Wolstenholme Estate

*Samuel W. Morris* and *William E. Lingelbach, Jr.*, for exceptants.

*Edwin J. McDermott*, contra.

BOLGER, J., April 16, 1962.—Thomas Wolstenholme left his estate in six parts. Four parts were given outright: The first to his widow and three other parts equally to three named sons. The two remaining parts he left in trust, one for each of his daughters, Florence and Emily, as recited in the adjudication. In paragraph fourth 2. of his will, he provided for the devolution of the share or shares of any child or children who predeceased him: "If any of my children die leaving issue surviving, the equal part . . . which the parent would have taken if living at the time of my decease shall be . . . registered in the name of my trustees in trust for such issue, to hold the same and expend the income for the maintenance, education and support of said issue and as each of such grandchildren attains the age of twenty-one years, the share which has immediately theretofore been providing the income or dividends payable to such minor child shall be assigned and transferred to such grandchild absolutely." He then provides the devolution of the share of any "grandchild," who survived him, but died during minority, to the brothers and sisters of such grandchild, or in default thereof to testator's wife, his surviving children and the issue of deceased children per stirpes, his daughters to take, however, only in trust.

In paragraph fourth 3., the one immediately in issue, after providing sole and separate use and spendthrift trusts for each of his daughters, Florence and Emily, he provides: "Upon the decease of said daughters or either of them leaving surviving *issue*" income is to be paid for the maintenance, education and support of the issue of such daughter until 21 when "the share which theretofore produced the income payable to such minor grandchild shall be given to him or her absolutely. Should any grandchild die during minority, such share shall go to the brothers and sisters of the one so dying" with gifts over as provided in the previous paragraph. The lack of an expressed gift over of the share of principal of a grandchild who attains majority, but fails to survive his or her mother, is what gives rise to the controversy.

The adjudication awarded one-half of the share of principal held in trust for the life of his daughter, Florence W. Hickman, who died January 12, 1961, to the personal representative of her daughter, Muriel H. Caskey, who died March 10, 1939, in her thirtieth year, and the remaining equal half to Alfred M. Hickman, a son of Florence W. Hickman. Benjamin R. Caskey, Jr., and Barry H. Caskey, sons of Muriel H. Caskey and great-grandsons of the testator, claimed their mother's share per stirpes. Alfred M. Hickman has filed exceptions claiming that he is entitled to the entire fund. Neither of the great-grandsons has excepted.

Great reliance is placed on Price's Estate, 279 Pa. 511, on behalf of the exceptant. It is inapposite. The language which led the Supreme Court to find contingent rather than vested remainders was as follows: "and upon *her* decease, leaving issue her surviving, then the said income to be applied . . ." (Italics supplied). The use of the word "her" definitely fixed the time at which the class was to be determined.

Exceptant also claims that the following language in the will ". . . and as each of said grandchildren attains majority, *the share which theretofore produced the income payable to such minor grandchild* together with a proper proportion of the accrued income shall be duly assigned and transferred to him or her absolutely", requires that any grandchild must have been entitled to income before the remainder could vest.

This is manifestly absurd. Exceptant himself, a brother of the deceased daughter, during his mother's lifetime was never entitled to any income. If his argument prevailed, his claim as a remainderman would be defeated.

Although the language used is inapt, clumsy and badly worded, it is sufficiently clear to demonstrate that testator intended his grandchildren to take the remainder. At the time the will was signed, he did not know how many grandchildren there might be, but it is clear that he intended all of his grandchildren who attained age 21 to share equally in the remainder.

" 'The use of incorrect or inaccurate language cannot defeat a testator's plain intent' ": Irwin's Estate, 304 Pa. 200.

The disputed phrase was an attempt to describe the quantum or the fractions in which principal was ultimately to be distributed.

It is clear that the testator intended the gift in remainder should be limited to grandchildren. The only gift over expressly made was upon two conditions: (a) The death of a grandchild during minority, in which event his or her share was to go to the brothers and sisters, if any, of the one so dying; (b) The failure of issue to survive the life tenant, and if that were to occur, principal supporting the daughters' shares of income was to be distributed in accordance with paragraph fourth 2.

The absence of any gift over of the share of a grandchild, who attained 21 but predeceased the life tenant, strongly supports a construction that the testator intended such grandchild to have a vested interest: Brumbach Estate, 373 Pa. 302 (1953).

The gift in remainder in the present instance was vested, subject to be divested upon the death of any child of the daughter prior to attaining age 21. Taylor Estate, 384 Pa. 550 (1956), page 556: "Where, as here, there is a limitation over in the event of the first beneficiary dying before he or she survives the period indicated, *the gift is vested subject to be divested . . .*"

The gift in remainder was clearly intended to be limited to grandchildren. This is a class gift and the interest of Muriel H. Caskey was vested and became indefeasible when she attained age 21. The fact that she failed to survive her mother did not divest her interest. At the death of the mother, the class became closed and, therefore, her share was ascertained. A similar problem has recently been presented in Lovering Estate, No. 417, January term, 1853, in which a gift to "issue" was construed as a class gift. As stated in the adjudication filed March 2, 1962, the proposition is simply set forth in Hunter Pa. O. C. Commonplace Book (2d ed.), Vol. VI, pages 148 and 149:

"Where there is a devise of a life estate, followed by a remainder to a class of persons, some or all of whom are unborn, the remainder is contingent until the birth of a member of the class in whom it vests immediately . . .

"The vesting is not postponed because of the uncertainty as to who, if any, may be the constituents of the class at the time fixed for the enjoyment of it: . . .

"The death of a remainderman before that of the life tenant does not divest his interest; the class may increase but not diminish: . . ."

The numerous authorities cited by Judge Hunter are principally cases in which the gift in remainder was to children, to children of deceased children, to children and the issue of deceased children per stirpes.

For the foregoing reasons, the exceptions are dismissed and the adjudication is confirmed absolutely.